This is an action for conversion. The trial court granted judgment on a jury verdict awarding plaintiff $18,000. Defendant argues that the trial court erred in ruling on the sufficiency of the evidence, in denying defendant's statute of limitations defense, in overruling objections to the admission of evidence, in instructing the jury on the measure of damages, and in failing to grant a new trial because the damages were excessive.
James Vanzant filed this action on June 21, 1983, against Nalria Edwards, the mother of Neal Edwards, deceased, as administratrix of his estate. The complaint charged that on or about April 2, 1977, Neal Edwards converted three trucks, the property of Vanzant, to his own use. Vanzant claimed punitive damages.
Mrs. Edwards filed a motion to dismiss the complaint on the grounds that it failed to state a claim and that it showed on its face that it was barred by the statute of limitations. The trial court did not rule on this motion but treated it as an answer and set a pretrial hearing. The pretrial order stated that the parties stipulated that "Nalria Edwards was appointed administratrix of the estate of Neal Edwards, deceased, and is still serving in such capacity," and that "Plaintiff timely and properly filed claims for the matters and amounts sued for in the Estate of Neal Edwards."
The case came to trial. At the close of plaintiff's evidence, Mrs. Edwards moved for a directed verdict on the grounds that the action was barred by the statute of limitations and that Vanzant had failed to present a scintilla of evidence to support his conversion claim. She renewed this motion at the close of all the evidence. The trial court denied both motions. After the jury returned its verdict, Mrs. Edwards filed a motion for judgment notwithstanding the verdict or, in the alternative, for a new trial. In addition to reiterating the grounds of the directed verdict motions, the motion for JNOV or new trial argued that the only evidence supporting the claim should have been ruled inadmissible under the Dead Man's Statute, Code 1975, § 12-21-163, and that the damages were excessive because the trial court erred in instructing the jury on the measure of damages. The trial court denied this motion, and Mrs. Edwards appealed.
In mid- to late 1976, Lavon Bentley was engaged in the logging business. He bought a 1960 model 1 1/2-ton Ford truck with a Satterfield loader, a 1966 Ford pick-up truck, and a 1966 GMC 3-ton tractor truck. Having difficulty in paying for the trucks, he arranged with Vanzant for Vanzant to buy the trucks and allow Bentley to continue using them. On November 4, 1976, Vanzant executed a note and security agreement to obtain a loan to pay for the trucks.
At the time, Bentley was parking the trucks at Neal Edwards's scrap yard and repair shop, because Bentley was cutting timber nearby. Edwards did some work on at least one of the trucks, and a bill in the amount of $350 remained unpaid.[1] Vanzant *Page 992 
testified that six or eight weeks after he signed the note on the trucks he drove by Edwards's property one day and saw the trucks, and that he drove by the next day and the trucks were gone. At trial, Edwards's administratrix objected to even this much testimony regarding the disappearance of the trucks, on the grounds that Vanzant was testifying about a transaction with the deceased. See Code 1975, § 12-21-163.
Vanzant testified that a year and a half or two years later he saw the 1 1/2-ton truck with the Satterfield loader on the highway. He followed it. After he saw where it was parked, he went to the sheriff, who told the man who had been driving the truck not to move it. Vanzant took the man who had been driving the truck to Edwards's shop, where, in the presence of witnesses, the man pointed to Edwards as the man who had sold him the truck. Vanzant testified that, when he had last seen the trucks before they disappeared, the loader was worth $7,250 and the truck was worth $4,500 to $5,000.
The statute of limitations for conversion is six years. Code 1975, § 6-2-34 (3). Section 6-2-14, however, provides that "[t]he time between the death of a person and the grant of letters testamentary or of administration, not exceeding six months, is not to be taken as any part of the time limited for the commencement of actions by or against his executors or administrators." Edwards died on December 4, 1982, and Nalria Edwards was granted letters of administration on December 13, 1982.
Code 1975, § 43-2-131, provides; "No civil action must be commenced against an executor or administrator, as such, until six months after the grant of letters testamentary or of administration, unless the executor or administrator has given notice of the disallowance of the claim." See Barrett v.Fondren, 262 Ala. 537, 80 So.2d 243 (1955). The parties stipulated that Vanzant filed a timely claim against the estate. Mrs. Edwards did not give notice of its disallowance.
The complaint alleged that the conversion took place on or about April 2, 1977. Under the operation of the above statutes, if the claim had not run by December 4, 1982, the limitation period upon it was tolled until June 13, 1983. Although Mrs. Edwards does not raise the failure to grant the motion to dismiss as error, we note that, considering the provisions of §§ 6-2-34 (3), 6-2-14, and 43-2-131, the complaint was not barred on its face.
Vanzant testified that he saw the trucks parked at Edwards's shop yard six or eight weeks after he bought them by paying off Bentley's indebtedness on November 4, 1976. He said he did not see them the following day or again until he saw the one truck on the highway. This testimony would put the alleged conversion around December 16-31, 1976. Under this evidence, when the statute was tolled at Edwards's death, approximately 12 days or more remained. Vanzant filed the complaint seven days after the end of the tolling period, on June 20, 1983. Bentley testified that the trucks disappeared somewhat sooner, perhaps two or three weeks after Vanzant bought the trucks. Bentley had stopped using the trucks, however, and he was not sure when they disappeared.
This evidence presented a jury question as to the time the cause of action accrued, so the trial court properly denied the motions for directed verdict on this ground. The court instructed the jury that if it determined that the conversion, if any, took place before December 11, 1976, the action would be barred. The jury, by its verdict, necessarily determined this question in favor of Vanzant, and there was evidence to support this verdict. Therefore, the denial of the motion for JNOV or new trial on this ground was proper.
Mrs. Edwards argues that the trial court erred in overruling her objections to *Page 993 
certain questions on the basis of the Dead Man's Statute, Code 1975, § 12-21-163. The only occasions when the trial court overruled objections based on the Dead Man's Statute and allowed testimony into evidence were when Vanzant's attorney asked him (1) when he saw the trucks on Neal Edwards's property and (2) where he took the man who was driving the truck that he recovered. Mrs. Edwards does not raise the ruling on the latter question as error, but does insist that the former relates to a transaction with the deceased.
The Dead Man's Statute prohibits a witness from testifying when
 "(1) the testimony concerns a transaction with or a statement of a person now deceased; (2) the estate of the deceased will be affected by the outcome of the suit; (3) the witness has a pecuniary interest in the suit; and (4) the interest of the witness is adverse to the decedent or his estate."
Lett v. Watts, 463 So.2d 138, 142 (Ala. 1984); Bank of theSoutheast v. Koslin, 380 So.2d 826 (Ala. 1980); Taylor v. FirstNational Bank of Tuskaloosa, 279 Ala. 624, 189 So.2d 141
(1966).
The second, third, and fourth criteria are met here; only the first is at issue. Mrs. Edwards argues that Vanzant's testimony concerned a transaction with her son. Vanzant counters that his testimony related to a condition that was open and obvious, not a transaction with Edwards. Vanzant's position, and the trial court's ruling, are correct. This Court has held that "a `transaction' involve[s] the idea that `something (was) done by both parties acting in concert, in which both took part,' and does not include matter which did not come to his knowledge by personal dealings with deceased." Southern Natural Gas Co. v.Davidson, 225 Ala. 171, 173, 142 So. 63, 64 (1932) (citations omitted); James v. Mizell, 289 Ala. 84, 265 So.2d 866 (1972);Taylor v. Bass, 279 Ala. 518, 187 So.2d 560 (1966); Stanley v.Hayes, 276 Ala. 532, 165 So.2d 84 (1964); Gilbreath v. Levi,268 Ala. 148, 105 So.2d 96 (1958); Gunter v. Frix, 265 Ala. 576, 93 So.2d 423 (1957); Gibson v. McDonald, 265 Ala. 426,91 So.2d 679 (1956).
The above-cited cases make plain that a "transaction" with the deceased must be a personal transaction between the witness and the deceased before the Dead Man's Statute operates to bar the witness's testimony. Vanzant's testimony was that he saw the trucks on Edwards's property. This was not a transaction within the meaning of the statute. The trial court did not err in overruling the objection.
Mrs. Edwards argues that Vanzant did not prove all the elements of a conversion. "[T]o constitute a conversion, `there must be a wrongful taking, or a wrongful detention, or an illegal assumption of ownership, or an illegal user or misuser,'" and the plaintiff, "[t]o be entitled to the right of recovery for conversion, . . . must have general or special title to the property in question, and the possession or the immediate right of possession." Jones v. Americar, Inc.,283 Ala. 638, 647, 219 So.2d 893, 900-901 (1969) (citations omitted); Ott v. Fox, 362 So.2d 836 (Ala. 1978); Whitman v.Mashburn, 286 Ala. 209, 238 So.2d 709 (1970).
We have carefully considered the record and determined that Vanzant's evidence was sufficient to support the verdict and judgment. When Vanzant was asked if he could document his ownership of the trucks, he answered that he no longer had his bill of sale. The note and security agreement that he signed, securing a loan on the trucks, together with his and Bentley's testimony that he bought the trucks when Bentley was unable to make his payments, were sufficient proof of title. Although Vanzant was allowing Bentley to use the trucks, the jury properly could have made the inference that Vanzant had the immediate right of possession. Mrs. Edwards did not argue at trial that her intestate had disputed Vanzant's right due to a mechanic's lien.
Some evidence of a wrongful taking came in the form of testimony from Bentley and Vanzant that the trucks disappeared from Edwards's property. The primary *Page 994 
evidence of a wrongful taking, however, came from Gene Wallace, who was present when Vanzant brought to Edwards's shop the man who had possession of the recovered truck. Wallace testified that the man pointed to Neal Edwards and said, "That's the man I bought the truck from right there."
Mrs. Edwards argues that there was no proof that the truck referred to in Wallace's testimony was one of the trucks specified in the complaint. In the context of Vanzant's testimony that he saw the man driving his 1 1/2-ton truck with the loader, Wallace's testimony was sufficiently linked to the allegations of the complaint. The trial court submitted the case to the jury regarding only this one truck and the loader. Therefore, we are not presented with a question of the sufficiency of the proof of a wrongful taking of the other two trucks.
The next argument Mrs. Edwards makes is that the trial court erred in instructing the jury on the measure of damages. The court gave instruction 39.01 from Alabama Pattern JuryInstructions — Civil (1984 Supp.):
 "The measure of damages for the conversion of personal property is the value of the property as of the date of the conversion; or the value of the property at any time between the date of the conversion and the trial, whichever is greater, with interest at the rate of six per cent (6%) per annum from the date of the conversion."
Mrs. Edwards argues that, because Vanzant recovered the truck and loader, the proper measure of damages is the diminution in value of the property plus the reasonable rental value during the time it was out of the plaintiff's possession.
Mrs. Edwards did not object to the trial court's instructions to the jury, but the following exchange took place during argument on her motion for directed verdict at the close of all the evidence:
 "Mr. Lang: . . . [T]he evidence is undisputed that he got that equipment back. They presented no evidence of the value of that equipment at the time they got it back. And certainly if he got the equipment back, he's not entitled to his money, any money. For aught this record shows, and it's his burden of proof, the property was worth more when he got it back than when he lost it. In a situation like that, the damages, one, is the rental value of the equipment for the period of time that he had it; and, two, any diminution in value of the value from the time of the wrongful taking and the value he got it back [sic], any diminution in value during that period of time or the rental value. And there's been absolutely no testimony come from this witness stand in that regard. If this case goes to the jury, and the plaintiff has the burden of proof, all the jury has got is the value of that equipment at some point in time; never any element of value after getting it back, never anything else. That's a complete failure of proof, Judge, as far as evidence goes.
 "The Court: I was just looking at the measure of damages in APJI 39.01. It doesn't say anything about before and after. Do you have a case that you would like to show the Court?
". . . .
 "Mr. Lang: I can cite you one case that says it's rental value, Johnson v. U-Haul of Southern Alabama, Inc., 357 So.2d 665 [Ala.Civ.App. 1978].
 "Mr. Sizemore: As to the after value, that's their burden, Judge, not ours.
"Mr. Lang: In a car wreck it's not.
"The Court: Yeah, I know what it is.
"Mr. Sizemore: This isn't a car wreck.
"Mr. Lang: Same element of damages.
 "The Court: Well, it doesn't have it set out that way in what we have to rely on here. . . . That sounds like some real good argument to the jury when you get a chance. I think I'm going to deny the motion and let you argue it to the jury.
 "Mr. Lang: I'm going to have to except for the record."
Even assuming this was sufficient to preserve the alleged error in the instructions, *Page 995 
Mrs. Edwards's argument does not present any reversible error. The court and Vanzant's attorney were correct that such evidence would relate to mitigation of damages, not to the sufficiency of Vanzant's proof. Roebuck Auto Sales, Inc. v.Wallace, 293 Ala. 231, 301 So.2d 546 (Ala. 1974). During cross-examination of Vanzant, he stated, "When I got it back it was tore all to pieces. I'll tell you what I got for it if you want to know." Mrs. Edwards's attorney responded, "I don't want to know; I just want to know if you got it back."
The measure of damages for which Mrs. Edwards argues is that for an action in statutory detinue. Roebuck Auto Sales, supra.
In conversion, the plaintiff receives damages as set out in the pattern jury instruction, and title to the chattel normally passes to the defendant upon satisfaction of the judgment. Id.
It appears that Vanzant has sold the truck, but the question of defendant's remedy is not before us.
Finally, Mrs. Edwards argues that the damages were excessive. The trial court instructed the jury on punitive damages, but we need not decide whether the evidence supports an award of punitive damages. The uncontested value which Vanzant placed on the truck and loader, $11,750 to $12,250, plus interest at 6% for nearly eight years (the jury rendered its verdict on September 28, 1984) would support the award of $18,000.
For the foregoing reasons, the judgment of the trial court is due to be, and it is hereby, affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, BEATTY and HOUSTON, JJ., concur.
[1] The case as presented to us does not present any question of Edwards's assuming possession under a mechanic's lien. See Code 1975, §§ 35-11-110 through -112; Smith v. Cooper Chevrolet,Inc., 404 So.2d 49 (Ala. 1981)